THE MEXICAN GULF RAILWAY COMPANY *v.* AUGUSTE VIAVANT, Administrator of the Succession of Antoine Bienvenu, deceased.

Under the provision of the 15th sect. of the act of 9th March, 1837, incorporating the Mexican Gulf Railway Company, declaring that " if any stockholder shall fail to pay any instalment required to be paid, for the period of thirty days next after the same shall have become due and payable, the stock on which such instalment shall have been called in, shall be forfeited to the Company," it is optional with the Company under the circumstances mentioned, in a contest between it and the stockholder, to declare the stock and the sums paid in forfeited, or to require the execution of the obligation of the stockholder, by paying the whole amount of the shares subscribed for by him.

A subscriber for the stock of an incorporated company cannot take advantage of any informalities in the manner of his subscription, unless in case of fraud or error. He will be bound to pay the amount subscribed by him, though books of subscription were not regularly opened according to the charter.

APPEAL from the Parish Court of New Orleans, *Maurian,* J. *L. Janin,* for the plaintiffs.

*Rousseau* and *Budd,* for the appellant.

SIMON, J. The administrator of the estate of Antoine Bienvenu, deceased, sued for the amount subscribed for by the deceased to the capital stock of the Mexican Gulf Railway Company, pretends, among other matters by him pleaded in his defence, that the charter of the said company, by providing " that if any stockholder shall fail or neglect to pay any instalment required to be paid for the period of thirty days next after the same shall have become due and payable, the stock on which such instalment shall have been called in, *shall be forfeited* to the company, (see page 56 of Laws of 1837,) precludes the plaintiffs from recovering the amount of the shares subscribed for, or in other words, that the company has no other remedy than the forfeiture of the stock.

There was judgment below in favor of the plaintiffs, and the defendant appealed.

The facts established by the evidence show, that Antoine Bienvenu subscribed for twenty shares of the capital stock of the Mexican Gulf Railway Company, amounting to $2000, no part of which was ever paid by the subscriber; that nine calls were made

on the stockholders for ten dollars on each share subscribed by them, and one call was made on them for eight dollars per share. Two dollars were to be paid in, at the time of subscribing. The deceased was called on several times for the payment of the instalments called for by the direction, or for his notes, with six per cent interest, according to the resolution of the Board of Directors; but he always refused to pay, or to give his notes with interest, consenting however, to give his notes without interest. The evidence further shows that the object of the charter has been partly complied with by the Company's making about nineteen miles of road; that said Company is very much embarrassed, and unable to meet its engagements punctually; and that advertisements calling upon the stockholders to pay the proportions required by the Board of Directors, were regularly published according to the provisions of the charter. The several resolutions of the Board, fixing the proportions to be called for from the stockholders, were also produced in evidence; and it is no where mentioned in the said resolutions, nor in the advertisements, that the Board of Directors ever intended to avail themselves of the penalty or clause of forfeiture contained in the 15th section of the charter. Nay, such penalty, or forfeiture, is not even alluded to in any of their proceedings exhibited by the record, and does not appear to have ever been in the contemplation of the Board of Directors.

We concur with the Judge, *a quo*, in the opinion, that the faculty allowed by the charter, of declaring such forfeiture, can only be considered as a penal clause, which the plaintiffs might or might not avail themselves of, but which, if they did not choose to avail themselves of it, by notifying the stockholders of their determination to do so, did not deprive them of the right of requiring the execution of the obligation contracted by the stockholders respectively, and of instituting an action against the defaulting stockholders for that purpose. The question here presented is, between the Company and one of the stockholders; and, under the 15th section of the charter, we are perhaps free to admit, that, as between themselves, at least, the remedy is *alternative;* that is to say, that the charter makes it optional with the Company to exact the penalty, by declaring that the stock, or the sums paid in, *shall be forfeited,* in case of non-payment, within thirty days, of any of

the instalments called in ; or to require absolutely the execution of the obligation contracted by the stockholder, of paying the whole amount of his shares. Art. 2120 of the Civil Code, which supports this position, provides, that "the creditor, instead of exacting the penalty stipulated from the debtor who is in default, may sue for the execution of the principal obligation :" and Pothier, (Obligations, No. 342,) says : " *Quoiqu'il y ait eu ouverture à l'obligation pénale par la demeure, en laquelle a été le débiteur d'exécuter l'obligation principale, le créancier peut, au lieu de demander la peine stipulée, poursuivre l'exécution de l'obligation principale.*" See also Toullier, Vol. 6, No. 465,—and 21 Wendell, 273. It is clear, therefore, that the plaintiffs, who are not shown to have ever done any act evincing an intention on their part to avail themselves of the forfeiture allowed by the charter, and whose resolution to exercise the faculty of declaring such forfeiture, if ever taken, does not appear by the record, and never was notified to the stockholders, were always at liberty to proceed against the deceased in his lifetime, to compel him to execute his principal obligation, and to sue him for the amount of his subscription.

We conclude that the plaintiffs are entitled to recover the amount of the twenty shares subscribed for by the deceased.

With regard to the objection urged by the defendant's counsel, that no books were ever opened according to the charter, and that, if opened, they never were exhibited or shown to the deceased, who subscribed for his shares upon a list, or *loose sheet of paper*, presented to him by three persons who called upon him for that purpose, we think it is untenable. The evidence shows, that the deceased knew the nature and object of the obligation which he was contracting ; that he subscribed with his eyes open, and for the very object contemplated and provided for by the charter ; that although he refused subsequently to pay the amount of his subscription, or to give his notes with interest, he was willing to give his notes without interest for the whole amount of his stock ; and we think it does not lie in the mouth of the administrator of his estate, to dispute the validity of an obligation contracted in good faith by the deceased. A very similar question was lately decided by us in the Western District, in the case of the *Red*

*River Rail Road Company* v. *Young*, in which we held, in sub-
stance, that a stockholder cannot take advantage of the informali-
ties existing in the manner in which his subscription was obtained,
unless there was fraud or error, and that he is bound to pay the
amount of his subscription, though books were not regularly
opened according to the charter of incorporation.  6 Robinson, 39.

*Judgment affirmed.*